**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

THE COLEMAN COMPANY, INC.,

Plaintiff,

v.

BACKHOME PRODUCTS LLC,

Defendant.

**Case No. 6:26-cv-01418**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff The Coleman Company, Inc. ("Coleman"), by and through its undersigned counsel, brings this Complaint for Damages and Injunctive Relief against Defendant BackHome Products LLC ("BackHome") and alleges as follows:

1. This action arises from BackHome's breach of the parties' trademark license agreement ("the License Agreement") concerning the COLEMAN trademarks ("Trademarks") and licensed outdoor cooking and fire-pit products, BackHome's breach of the License Agreement, Coleman's damages and termination of that license, and BackHome's obligations following termination.

## PARTIES, JURISDICTION, AND VENUE

2. Coleman is a Delaware corporation with its current principal place of business in Atlanta, Georgia. The License Agreement identifies Coleman at 3600 N. Hydraulic, Wichita, Kansas 67219.

3. BackHome is an Arizona limited liability company. Each amendment to the License Agreement identifies BackHome at 8321 E. Evans Road, Scottsdale, Arizona 85260. BackHome can be served through its Statutory Agent, identified as United States Corporation Agents, Inc., at 1820 E. Ray Road #1000, Chandler, Arizona, Maricopa, 85225.

4. This action includes claims arising under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1051 et seq. This Court therefore has original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121(a).

5. Coleman's state-law claims form part of the same case or controversy as its federal claims, and the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6. Personal jurisdiction and venue are proper in this District under Section 31 of Schedule A of the License Agreement. The License Agreement is governed by Kansas law and requires any legal action relating to the License Agreement or its subject matter to be brought in a state or federal court having jurisdiction at Coleman's principal place of business as stated in the License Agreement, which at the time of contracting was Wichita, Kansas. BackHome irrevocably consented to personal jurisdiction in this court and waived objections based on venue or forum non-conveniens.

## FACTUAL ALLEGATIONS

### The License Agreement

7. Effective January 1, 2023, Coleman and BackHome Products (identified in the License Agreement as both Back Home Products and BackHome Products) entered into a written Trademark License Agreement (the "License Agreement"). The License Agreement contains two sets of terms: the Basic Provisions, consisting of numbered paragraphs 1 through 13, and Schedule A, entitled Standard Terms and Conditions, and consisting of sections 1 through 33. The License Agreement contains several Schedules in addition to Schedule A, including Schedule B (Payment Instructions and Transfer Fee), Schedule C (Royalty Reporting Template), Schedule D (Submissions Notice and Trademark Notice), Schedule E (Manufacturer Authorization Agreement), and Schedule F (incorporating a Code of Conduct and Responsible Sourcing

Manual). The License Agreement was amended by the parties several times, including by Amendment #1, dated May 20, 2025; Amendment #2, dated June 10, 2025; and, Amendment #3, dated May 1, 2026. The parties also entered into a Domain Name Use Agreement dated January 23, 2024. The License Agreement, from which confidential financial information has been redacted, its amendments and the Domain Name Use Agreement are collectively referred to as the "License Agreement" and are attached hereto as Exhibit A.

8. Under the License Agreement, Coleman granted BackHome a non-exclusive, non-transferable, royalty-bearing license to use certain Trademarks identified in paragraph 2 the Basic Provisions of the License Agreement in connection with Licensed Products, identified in paragraph 3 of the Basic Provisions, including certain grills, grill accessories, fire pits, and fire-pit accessories, subject to the License Agreement's restrictions and approval requirements.

9. The License Agreement, as amended, provides for a term through December 31, 2028, unless earlier terminated in accordance with its provisions.

10. The License Agreement requires BackHome to make Earned Royalty payments and Minimum Guaranteed Royalty Payments, accompanied by royalty reports.

11. Section 4.4 requires the payment of interest on past-due amounts for royalty payments at the lesser of eighteen percent (18%) per annum or the maximum rate permitted by law.

12. The License Agreement also imposes numerous quality-control, product-approval, authorized-channel, insurance, manufacturing, reporting, trademark-protection, and related obligations intended to protect Coleman and its trademarks.

**BackHome's Failure to Pay Royalties and Coleman's Notice**

13. In breach of its obligations under the License Agreement, BackHome failed to make certain Minimum Guaranteed Royalty payments for the fourth quarter of Year 3 (2025), in the amount of $75,000.00, and at least two quarterly payments for Contract Year 4 (2026), in the amount of $237,500.00.

14. On September 16, 2026, Coleman delivered to BackHome a written notice of breach, identifying BackHome's failure to pay the Minimum Guaranteed Royalty payments and providing BackHome the opportunity to cure the breach within twenty (20) days of the notice pursuant to section 10.2 of Schedule A. The letter is attached as Exhibit B.

15. BackHome, through its President and CEO Rich Godfrey, responded in writing to Coleman's notice of breach in early October 2026 but BackHome has failed to make the required payments and therefore failed to cure the breaches identified by Coleman to Coleman's reasonable satisfaction within the contractual cure period.

**Coleman's Termination and BackHome's Post-Termination Breach**

16. On October 9, 2026, Coleman sent BackHome a written Notice of Termination of the License Agreement. The letter is attached hereto as Exhibit C.

17. Sections 4.2 and 4.3 of Schedule A require certain guaranteed royalty payments and royalty reports. At the time of the Notice of Termination, BackHome had not paid the full amount of Minimum Guaranteed Royalty Payments for the fourth quarter of Contract Year 3 of $75,000 and the first two quarters of Contract Year 4 of $237,500, for a total of $312,500.

18. Since the Notice of Termination, the royalty payment for the third quarter of 2026 of $118,750 has become due and owing. BackHome has failed or refused to pay these past due and owing amounts for Year 3 and Year 4 of the License Agreement. As of the date of filing this Complaint, a total of $431,250 is due and owing from BackHome to Coleman. Section 10.2 of the

License Agreement permits termination upon twenty (20) days' prior written notice for breaches not cured to the non-breaching party's reasonable satisfaction during that period. Coleman's termination of the License Agreement is therefore valid. Section 10.1 separately provides Coleman immediate termination rights for specified breaches.

19. Section 11.1 requires BackHome, upon the effective date of termination, immediately to discontinue use of the Trademarks and Work Product and cease manufacture, shipment, marketing, promotion, distribution, display, and sale of Licensed Products and Materials, subject only to any applicable sell-off rights.

20. BackHome agreed in Section 11.1 that failure to comply with those cessation obligations would cause Coleman irreparable injury and that Coleman would be entitled to injunctive relief in addition to other remedies.

21. BackHome has failed or refused to comply with section 11.1.

22. Under Section 11.2, within fifteen (15) days after termination, BackHome must submit a royalty report and pay all Earned Royalties and unpaid Minimum Guaranteed Royalty Payments.

23. BackHome has failed or refused to comply with all requirements of section 11.2.

24. Under Section 11.3, if the License Agreement is terminated for a reason other than Coleman's breach, all unpaid Minimum Guaranteed Royalty Payments for all Contract Years, including Contract Years after termination, become due within twenty (20) days after termination.

25. The remaining unpaid Minimum Guaranteed Royalty Payments as of the date of filing for all Contract Years totals $1,468,750. BackHome has failed to pay these amounts to Coleman, in breach of section 11.3, resulting in an unpaid royalty obligation of $1,900,000, which is the amount of past due and future minimum royalty fees.

26. Section 11.4 requires an inventory report at expiration or immediately upon notice of earlier termination, and Section 11.5 requires written proof of destruction of trademark-bearing items.

27. BackHome has failed to comply with its obligations under Sections 11.4 and 11.5.

28. Section 11.6 provides a 120-day Sell-Off Period only where the License Agreement expires or is terminated other than for BackHome's breach. A termination for BackHome's breach, as has happened here, does not provide BackHome a Sell-Off Period under Section 11.6.

29. Sections 8.1 through 8.3 require BackHome to recognize Coleman's ownership of the trademarks, avoid conduct adversely affecting Coleman's trademark rights, and cooperate in securing and protecting those rights.

30. BackHome has failed or refused to comply with numerous other obligations triggered by Coleman's termination of the License Agreement.

31. BackHome's breaches have damaged Coleman. BackHome's continued use of the Trademarks after termination without authorization threatens continuing injury to Coleman's rights and goodwill in the Trademarks, which injuries cannot be remedied through money damages.

## COUNT I
## INJUNCTIVE RELIEF / FALSE ASSOCIATION AND UNFAIR COMPETITION

32. Coleman incorporates Paragraphs 1 through 31 as if fully set forth herein.

33. Following termination of the License Agreement, BackHome has no right to use the Trademarks except to the extent expressly authorized by a surviving contractual provision or other written authorization from Coleman. There is no contractual provision or authorization by Coleman allowing BackHome to continue to use the Trademarks.

34. BackHome's continued unauthorized use of the Trademarks in commerce in connection with licensed or related goods is likely to cause confusion, mistake, or deception

concerning affiliation, connection, association, sponsorship, approval, source, or origin, including whether BackHome remains an authorized Coleman licensee.

35. Such unauthorized conduct constitutes false association, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a).

36. Under 15 U.S.C. § 1116 and Section 11.1 of the License Agreement, Coleman is entitled to appropriate preliminary and permanent injunctive relief restraining continued unauthorized use of the Trademarks and false representations of affiliation or license status.

**COUNT II**
**LANHAM ACT TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

37. Coleman incorporates Paragraphs 1 through 36 as if fully set forth herein.

38. Coleman owns rights in the Trademarks licensed to Back Home under the License Agreement.

39. Upon termination of the License Agreement, BackHome's authority to use those trademarks ceased except as expressly provided by the License Agreement or by Coleman in writing. Coleman has not authorized any continued use of the trademarks. BackHome is currently using the trademarks in connection with its website, colemanbackhome.com.

40. BackHome's continued use of the Trademarks in commerce without authorization in connection with the advertising, promotion, offering for sale, sale, distribution, or manufacture of goods, including through its website, is likely to cause consumer confusion, mistake, or deception concerning BackHome's connection with Coleman and whether its goods are authorized, sponsored, approved, or licensed by Coleman.

41. Such conduct constitutes trademark infringement and federal unfair competition, including false association and false designation of origin, under 15 U.S.C. §§ 1114 and 1125(a).

42. Subject to proof, Coleman is entitled under 15 U.S.C. § 1117 to recover the remedies allowed by law, including BackHome's profits, Coleman's damages, costs, and, where the statutory requirements are satisfied, enhanced damages and reasonable attorneys' fees.

**COUNT III**
**BREACH OF CONTRACT**

43. Coleman incorporates Paragraphs 1 through 42 as if fully set forth herein.

44. The License Agreement is a valid and enforceable contract supported by consideration.

45. Coleman performed its obligations under the License Agreement or was ready, willing, and able to perform them, except to the extent performance was excused by BackHome's breaches.

46. BackHome materially breached the License Agreement by the conduct identified in Coleman's September 16, 2026, notice of breach and by failing to cure as required by the License Agreement, as set forth more fully herein.

47. BackHome further breached the License Agreement's post-termination obligations, including the obligations set forth in the October 9, 2026, Notice of Termination, and in Section 11 relating to cessation of trademark use, royalty reporting and payment, minimum guaranteed royalties, inventory reporting, destruction, and sell-off restrictions, and in the manner set forth more fully herein.

48. As a direct result of BackHome's breaches, Coleman has sustained and will sustain damages in an amount to be determined, including amounts contractually due, interest, and other recoverable losses.

**COUNT IV**
**ATTORNEYS' FEES, COSTS, AND EXPENSES**

49. Coleman incorporates Paragraphs 1 through 48 as if fully set forth herein.

50. Section 28 of the License Agreement provides a basis independent of the Lanham Act for attorney fees, stating that, in any action brought by a party under or relating to the License Agreement, the prevailing party is entitled to recover its attorneys' fees, costs, and expenses from the non-prevailing party.

51. Section 13.2 also requires BackHome, in specified circumstances, to indemnify Coleman for costs and expenses including attorneys' fees and costs of collection relating to Back Home's breach.

**52.** Coleman seeks all attorneys' fees, costs, and expenses recoverable under the License Agreement and applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Coleman respectfully requests that the Court enter judgment in its favor and against BackHome and:

A. Enter preliminary and permanent injunctive relief prohibiting unauthorized use of the Trademarks and false representations of affiliation, sponsorship, approval, or license status and require BackHome to meet its post-termination obligations under the License Agreement;

B. Award Coleman all monetary relief available under the Lanham Act, 15 U.S.C. § 1117, as supported by the evidence;

C. Award Coleman damages for breach of contract, including all amounts due under the License Agreement and applicable prejudgment interest;

D. Require an accounting of BackHome's post-termination manufacture, distribution, advertising, promotion, offers for sale, and sales of goods bearing the Trademarks to the extent relevant to Coleman's claims and remedies;

E. Award Coleman its reasonable attorneys' fees, costs, and expenses as permitted by the License Agreement and applicable law;

F. Award post-judgment interest as provided by law;

G. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff The Coleman Company, Inc., demands a trial by jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Wichita, Kansas as the place of trial.

Respectfully submitted,

**FOULSTON SIEFKIN LLP**

By: *s/ Jeff P. DeGraffenreid*
Jeff P. DeGraffenreid, KS #15694
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206
Telephone: (316) 267-6371
jdegraffenreid@foulston.com
*Attorneys for Plaintiff The Coleman Company, Inc.*